Charles Stanton Sullivan, Jr.
Pro Se
122 West Cusseta Street
P. O. Box 332
Dadeville, Alabama  36853
Phone 334-734-6198
Office Phone 256-825-6365
Email a.sthomas27@yahoo.com

## IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF ALABAMA

## EASTERN DIVISION

RECEIVED

DEC 14 2022

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

CHARLES STANTON SULLIVAN,JR,                     )
RUTH S. SULLIVAN,DECEASED                        )
BY CHARLES STANTON SULLIVAN,JR                   )
PERSONAL REPRESENTATIVE OF HER ESTATE            )
                                                 )
     PlaintiffS,                                 )
                                                 )
v.                              CASE NO.         )
                                                 )
PRATTVILLE HEALTH AND REHABILITATION, Llc        )
MEDICARE,                                )
MAXIMUM FEDERAL SERVICES,                        )
BLUE CROSS AND BLUE SHIELD OF ALABAMA,           )
EAST ALABAMA HEALTH CARE AUTHORITY               )
d/b/a EAST ALABAMA MEDICAL CENTER                )
EAST ALABAMA MEDICAL CENTER                      )
EAMC-LANIER                                      )
EMERGENCY MEDICAL SERVICES,                      )
DR. KEITH FULLER, D.O.,                          )
DR. Gregory Shields, M.D.,                       )
Amedisys Home Health of Alabama, LLC,            )
Unknown Amedisys Nurse                           )
Hon. Talmadge East                               )
Hon. Charles Hall                                )
Hon. Mitchell Gavine                             )
PARKWOOD HEALTH CARE FACILITY A SUBSIDIARY       )
OF CROWNE HEALTHCARE,                            )
RUSSELL MEDICAL A SUBSIDIARY                     )

```
OF Medical Park Inc.                        )
RUSSELL MEDICAL BEING MANAGED               )
BY UAB HEALTH SYSTEMS,                       )
                                             )
        Defendants.                          )
```

**Violations of Constitutional Rights**
**Violations of Sherman Act**
**42 U.S.§1983**
28 U.S. §1332
28 U.S. §1334

## COMPLAINT

1Comes now Plaintiff, Charles Stanton Sullivan, Jr., son of Ruth S. Sullivan, her past power of attorney, and her current personal representative according to her Last Will and Testament complaining about PRATTVILLE HEALTH AND REHABILITATION, LLC,(PH&R) MEDICARE, MAXIMUM FEDERAL SERVICES,(MFS,BLUE CROSS AND BLUE SHIELD OF ALABAMA,(BC\BS),EAST ALABAMA HEALTHCARE AUTHORITY,LLC D/B/A EAST ALABAMA MEDICAL CENTER, DR. KEITH FULLER, D.O., DR.GREGORY SHIELDS, MD ,AMEDISYS HOME HEALTH OF ALABAMA, LLC, AMEDISYS NURSE WHOSE NAME IS UNKNOWN, PROBATE JUDGE OF TALLAPOOSA COUNTY, ALABAMA HON. TALMAGE EAST, HON. CHARLES HALL, HON. MITCHELL GAVIN,PARKWOOD HEALTH CARE FACILITY,LLC A SUBSIDUARY OF CROWN HEALTHCARE, RUSSELL MEDICAL, A SUBSIDIARY OF MEDICAL PARK,INC, RUSSELL MEDICAL BEING MANAGED BY UAB HEALTH SYSTEMS OTHER UNKNOWN ATTENDING PHYSICIANS AT PARKWOOD HEALTH CARE FACILITY,LLC, AT RUSSELL MEDICAL CENTER, OTHER UNKNOWN ATTENDING PHYSICIANS, AND UNKNOWN, ATTENDING DOCTORS, NURSES. TECHNICIANS, AND CNAS WORKING AND EMPLOYED BY HOSPITALS, DHR, AND NURSING HOMES LISTED OR NOT LISTED ABOVE, Defendants, and shows and states the following as a cause of action:

2This is a cause against a rehabilitation facility, Prattville Health and Rehabilitation, the United States senior health care provider, Medicare, a quasi judicial organization, Maximum Federal Services, and a health care provider that operates as the servicer for Medicare, Parkwood Health Care Facility, LLC, a nursing home, Blue Cross/Blue Shield of Alabama, a federal Medicare intermediary that provides additional insurance beyond Medicare, East Alabama Medical Center, a hospital, two doctors, Dr. Keith Fuller D.O and Dr. Gregory Shields MD,

Amedisys Home Health of Alabama, LLC a rehabilitation and care provider for patients in a home setting,  and others listed above in style of this case for failure to properly and promptly care for a patient, Ruth S. Sullivan, Attorney at Law under their combined care that jointly and severally resulted in proximate cause of her death.

3Defendant, PRATVILLE HEALTH AND REHABILITATION, Llc is a limited liability company that is incorporated in the State of Alabama.  Service of process on the Defendants may be made by serving its agent, Edward R. Christian, 420 N. 20th St. Ste. 3100, Birmingham, Alabama  35203.

4Defendant, Medicare, is a federal government agency of the United States, operating as Centers for Medicare & Medicaid Services (CMS) *of the United States Department of Health and Human Services.*  Service of process on the Defendants may be made by serving *Medicare Contact Center Operations, PO Box 1270,Lawrence, KS 66044.*

5Defendant, *Maximum Federal Services, is a contractor and assumed to be a company for making quasi judicial review of medical records to determine patient status for post operative and post hospital care amongst other unknown functions.* Service of process on the Defendants may be made by serving *Maximum Federal Services, Medicare Part C, Qualified Independent Contractor (QIC),*3750 Monroe Avenue Suite 702, Pittsford, New York 14534-1302.

6Defendants, Parkwood Health Care Facility, LLC, is a subsidiary of Crown Management Corporation and operates a nursing home in Phenix City, Russell County, Alabama.  Service of process on the Defendants may be made by serving its agent, Mr. Noel N. Dunnam, 501 Whetstone Street, Monroeville, Alabama  36460.

7Defendant, BLUE CROSS AND BLUE SHIELD OF ALABAMA, is a corporation that is incorporated under the laws of and has its principal place of business in the State of Alabama.  Service of process on the Defendants may be made by serving its agent, James Lewis Priester, 450 Riverchase Pkwy. East, Birmingham, AL 35244.

8Defendant, EAST ALABAMA HEALTH CARE AUTHORITY d/b/a EAST ALABAMA MEDICAL CENTER ,EAST ALABAMA MEDICAL CENTER SKILLED NURSING FACILITY, EAMC-LANIER EMERGENCY MEDICAL SERVICES , is a corporation that is incorporated under the laws of and has its principal place of business in the State of Alabama.  Service of process on the Defendants may be made by serving its agent, Ms. Lauri Grill 2000 Pepperell Parkway Opelika, Alabama 36801

9Defendant,Dr. Keith Fuller D.O., is an individual doing business as a doctor under the laws of Alabama and has his principle place of business in the State of Alabama.  Service of process on Defendant, may be made by serving Dr. Keith Fuller 2214 Gateway Dr. - Suite C Opelika, AL 36801.

10Defendant, Dr. Gregory Shields, MD, is an individual doing business as a doctor under the laws of Alabama and has his principle place of business in the State of Alabama.  Service of process on Defendant, may be made by serving Dr. Gregory Shields, MD 121 N 20th St BUILDING 6, Opelika, AL 36801

11Defendant, Amedisys Home Health of Alabama, LLC, is a Louisanna corporation that is incorporated under the laws of and has its principal place of business in the State of Alabama.  Service of process on the Defendants may be made by serving its agent
Ms. Grace E. Kirby, Asst. Vice President Corporation Service Company, Inc. , 641 South Lawrence Street. Montgomery, AL 36104.

12Defendant, Hon. Talmage East, is a public official being a Probate Judge of Tallapoosa County, Alabama and has his principal place of business in the State of Alabama. .  Service of process on Defendant, may be made by serving Hon. Talmadge East, 125 North Broadnax Street, Dadeville, Alabama  36853.

13Defendant, Hon. Charles Hall, is an attorney and has his principal place of business in the State of Alabama.  Service of process on Defendant, may be made by serving Hon. Charles Hall, at The Hall Law Firm, 111 North Tallassee Street, Dadeville, Alabama  36853.

14Defendant, Hon. Mitchell Gavin is an attorney and has his principal place of business in the State of Alabama.  Service of process on Defendant, may be made by serving Hon. Mitchell Gavin, at 1258 Lee St, Alexander City, AL 35010.

15Defendants, , RUSSELL MEDICAL, a subsidiary of Medical Park Healthcare Center, Inc, RUSSELL MEDICAL being managed by UAB Health Systems, is a hospital and corporation , that is incorporated under the laws of and has its principal place of business in the State of Alabama.  Service of process on the Defendants may be made by serving its agent, Mr. James W. Brown, Jr., P.O. Box 939, Alexander City, Alabama  35010.

16Other Defendants will be added as their involvement becomes more known.

## JURISDICTION

17Plaintiff has become aware of a general rule that non attorneys cannot proceed in a suit on behalf of anyone other than themselves. Plaintiff is filling suit on his behalf and his deceased Mother's behalf after searching for and talking with over forty and maybe fifty attorneys in Alabama, Florida, and Georgia about their handling of this issue. He knew of that rule when he first filed suit in Alabama. All of the attorneys declined to represent RSS for various reasons or no reason at all.

18RSS is now permanently deceased. She is no longer a person but her rights did not perish with her. Memories of her ever fading in minds of those that knew her are all that remain and will eventually fade forever. Her important legal matters have to be pursued by her personal representative. Lack of an attorney is preventing that pursuit in this cause. Her estate is almost settled as near entirety went to Plaintiff that had not already been divided over forty years ago. Two items, an oboe and a piano have not been transferred to Auburn University but at least oboe will go soon. Piano will take some moving.

19As a non person, a deceased, she only leaves behind her wishes. One last wish by her spoken to Plaintiff while she was at Russell was to "take her case" her situation as an incompetent "to Circuit Court." She is reported by hospice to have said to hospice "I have legal matters to attend to" while she was still able to talk. Mother is not party to this suit so much as damage she suffered while alive is party to this suit.

20Plaintiff considers damage done to his Mother at Prattville and Parkwood to be criminal in nature not civil. He knows better than to pursue that route after nearly $100,000.00 in items were stolen from him when he had a stroke without prosecution of those who did the stealing.

21Therefore, Plaintiff prays this Court will put on its blindfold, ready its balance, and take up its sword and carefully consider circumstances that anyone could find themselves in when a close relative dies at hands of disinterested care givers.

   a. Family is very few, other than two husbands, total is six. Mother and only Mother had over twenty first cousins youngest being in her fifties.
   b. Plenty of engineers and professionals but no attorneys.

c. Both Prattville and Parkwood completely excluded visitors with Co-vid as reason until after Mother died.

d. Parkwood was happy to take money but would not take advice.

e. Possibility exists that Mother was intentionally killed. Plaintiff doubts that although he will never know for sure.

f. Doctors and staff that cared for Mother were shocked by some of her behaviors; behaviors that came about because she was in an unfamiliar place – not at home.

g. Therefore she was crazy and physically damaged in addition. In their minds, she was ready to die.

h. Cut off her food; allow pressure ulcers a better opportunity to flourish with her not eating but a couple of table spoons of food a day.

i. Do not move her or bath her in water. Do not dress her either. She gets to stay in bed and await death.

j. Some how or another break her glasses so she cannot read.

k. Do not move her limbs so that they contract and become fixated.

l. These damages brought on her early death.

m. Process took about forty-eight (48) days from March 24, 2021 to May 10, 2021. Mother was recoverable at start. How long this condition lasted is not known.

n. BAR and Courts by preventing non-attorneys from representing (NPL) even a deceased close relative allow tremendous damage to young and old invalids as Mother was for about five (5) years.

o. Attorneys want an easy case that can be negotiated without trial rather than have to work digging up facts.

p. With a modern tool such as internet, simple searches will give fair answers to legal questions but not as informative as Westlaw, Casetext, Lexis or Fastcase that often cost a fee. Attorneys are often not needed until discovery issues arise such as what discovery is allowed by law.

q. Precedent is greatly in favor of a person needing a lawyer to represent someone, a family member, even a child, in a civil matter. Precedent does not always stand as evidenced by many changes over time usually several generations of lawyers as opposed to public.

r. Now is time to allow justice to shed some light on nursing home and hospital care abuses rather than allowing them to hide behind sheets of BAR and lawyer desires.

s. BAR and lawyers to include Judges are protecting their interests that violates Article 2 of The Sherman Act. Truly an embarrassing situation.

22Plaintiff has major doubts about constitutional issue of justice for a deceased person when all attorneys decide they are too busy for, will not be financially compensated enough for, or not interested for selfish reasons in an incapacitated person's terrible conditions and horrible treatments in what amounted to forced euthanasia suffered by an elderly person between eighty-nine (89) and ninety years (90) of age. No consideration was given as to how she became incapacitated or when or where that happened.

23Attorneys through actions of state BARs have since late 1880's or even earlier tried to monopolize courts and legal systems to advantage of attorneys. Reason given was to advantage public interests. Current situations would say reason was to advantage attorneys. See Derek A. Denckla, Nonlawyers and the Unauthorized Practice of Law: An Overview of the Legal and Ethical Parameters, 67 Fordham L. Rev. 2581 (1999). Available at: https:/ /ir.lawnet.fordham.edu/flr/vol67/iss5/32.

24Sherman Act should prevent such actions but, by legal maneuvering, attorneys have generally circumvented Sherman Act protection of public. Attorney fees have risen dramatically as monopoly and associated side deals among lawyers, officials, and courts that come with large monetary outlays have increased. Not saying otherwise is to admit to blindness. Cases that show some of considerations by United States Supreme Court are *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) and *Parker v. Brown*, 317 U.S. 341 (1943).

25Parker v Brown determined that raisin price fixing was allowed because law to implement scheme was a state law.

> 26"The required vote on the referendum is one of these conditions." *Parker v. Brown*, 317 U.S. 341, 352 (1943). Here can be found several key points. First, California was primarily a wheat growing state until poor practices reduced profitability and, specialty crops such as raisins partially replaced wheat. Specialization increased profits and, money lures politicians into a situation. Consequently, an agriculture department was needed to control farmers. Farmers do not like to be told what to do that lead to this suit by Brown. Second, a vote justifies everything. Not so. Unless United States Constitution is shredded and burned, citizens cannot vote to achieve goals such as deportation of all Chinese or execution of all bricklayers

without someone in Court system stopping voter's efforts even
before vote. Hitler was elected no less. Third, an effort to raise
prices against processing and production methods of one
company by politics rather than by better production
performance flies in face of United States economic tenants.
BAR is doing all of these as any look at "The Alabama Lawyer"
will show :legacy firms, flip flopping on constitutional issues,
and siding with large corporation claims have all been
complaints against legal systems from ages past. Votes do not
prove anything much more than how many people can be
convinced of values of multiple issues at a given time now
primarily focused on fifty percent plus one vote.

27Decision in *Parker v. Brown* did not address any of
above three issues. Instead, decision was based on state
authority to regulate from legislature state agriculture. State
agriculture is not same or similar to human life. State cannot
euthanize individuals nor give Doctors authority to do so.

28Goldfarb curtailed price fixing by county bar associations. Low price fixing
by county bar associations would not seem to be a major issue unless no attorney
bothers to take a case that is happening here. Why is this happening? One simple
answer is the cause of death on death certificate. Another is cost of Doctor to oppose
treatments and drugs given to patient by expert testimony. Another stated cost is
deposition fees. These have been stated as reasons by Attorneys who gave reasons.

29Who protects dangerously ill individuals? Hospitals showcase their efforts
to salvage majorly damaged never-do- wells whom may spend years and finally
come to and go back to drinking, drugging, and sleeping on rail tracks. Or, an
indigent person might be an innocent child. Whatever patients case may be from
one to a hundred and twenty, patient will get care at hospital – for a time
depending on situations.

30When is care to stop. Family with Court's assistance should help prevent
premature death and torture near death. RSS had no real friends in Court. She
had beaten most of them or angered Judges in some way. Once at Parkwood,
Parkwood had to care for her.

31Parkwood did not nor did Prattville. Others also gave her a "so long wave."
Only way, within the law, to stop abuse of elderly is to make wrongful actors comply
with common sense standards. Patients must be fed. Patients must be turned in
bed. Rooms and patients must be kept clean and disinfected. Patients must be
bathed. Patients must be monitored, Patients must be allowed to sit in chairs and
eat at a table. Patients cannot lie in bed for twenty-four hours of each and every
day until patient dies. Many more examples could be given. EAMC and Russell

Medical failed in care for RSS also. She lost forty or more pounds in no more than 48 days of their care. Low weight and being bed bound is a sure road to pressure ulcers.

32An attorney is not needed to present this case. A few witnesses and Attachedment One, photographs should be enough to show the wrong done to RSS.

33Fundamentally, a person has a right to be offered at least fair to good treatment when a facility offers to treat that person. RSS did not get even poor treatment.

34Persons are offered redress in Court in The United States of America. Plaintiff has tried to pay Attorneys he contacted. None would take money.

35Redress in Court is offered to avoid alternatives such as feuds and reprisals outside legal limits. Numerous mass murders may be some kind of demented signal that Courts are falling short. Or, maybe public is falling short.

36After a look at ATTACHMENT ONE, anyone should see that major harm was done that resulted in RSS's death. RSS would have been better served to have forgone her last forty-eight days in hospital and nursing home and simply stepped in front of 2 AM train.

37Founders of The United States did not expect a person to be killed when alternatives and alternative care could have saved that person. These thoughts are exemplified in Declaration of Independence and Constitution. Exclusive rules to benefit Attorneys should not trump those documents.

> 38"The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these vital rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with

such an evil. *Schneider* v. *State*, 308 U.S. 147 (1939);
*Cantwell* v. *Connecticut*, 310 U.S. 296 (1940). .......But it
is equally apparent that broad rules framed to protect the
public and to preserve respect for the administration of
justice can in their actual operation significantly impair
the value of associational freedoms." *Mine Workers v.*
' *Illinois Bar Assn*, 389 U.S. 217, 222 (1967)

39By not being able to present a case to Court, Plaintiff's rights to free
speech and free press are being abridged. By press, he means written word
not press in more normal sense of publications presented to public although
Court is public.

40Many attorneys hinged their decision not to represent RSS on Death
Certificate's cause of death being "vascular Parkinson's" when in fact RSS
had multiple system atrophy. Death certificates are prepared by a Doctor
after consulting with hospice if what Parkwood indicated can be trusted.
Doctor is not going to substitute starvation, poor hygiene, drug
administration, failure to address pressure ulcers, and prevention of visits
and contact by family as cause of death. Too much trouble in doing so and in
so doing is conspiratorial attempt to protect Dr. Keith Fuller and others
unknown whom treated and attempted to feed and care for RSS.

41It is not enough that the anticompetitive conduct is
"prompted" by state action; to be exempt, such conduct must be
compelled by direction of the State acting as a sovereign. Here
the State Bar, by providing that deviation from the minimum
fees may lead to disciplinary action, has voluntarily joined in
what is essentially a private anticompetitive activity, and hence
cannot claim it is beyond the Sherman Act's reach. Pp. 421 U. S.
788-792.

42There is no state statute that compels or forces behaviors as were exhibited
at Prattville, Russell, and Parkwood. Rather these were actions with a plan. RSS
was to be taken out of legal practice, removed from her home where she desired to
meet death, and placed in a non-caring nursing home for forty days of abuse.

43(PH&R) and (BC\BS) do business in Alabama and are Alabama corporate
entities. (MFS) does business in Alabama through Medicare which is a national
health care provider doing business in all United States' states, territories, and

possessions, Alabama included. **Multiple counties in Alabama are involved. A
Louisiana firm is involved. Diversity is the norm here.**

44Additionally, venue is properly established in this Court under 28 U.S.
§1331 as her constitutional rights to a trial were violated as she was sentenced to
death by Probate Judge and DHR and 28 U.S. §1332 as to diversity and cost that
are to exceed $75,000.00, and §6-5-551 Code of Alabama, 1975 as amended that
codifies legal remedies for damages suffered by the above Plaintiff by the operation
of Defendants. Diversity is maintained because corporations are shell gaming their
state of incorporation to prevent diversity. However, their mistake is not using
same name in both states for subsidiary and managing corporation. Nor is final
control in any matter specified.

45Venue is properly established in this Court under 42 U.S. §1983 as RSS's
numerous rights were violated. She was not allowed to testify on her behalf in
Probate Court violating The First Amendment. The Fifth and Sixth Amendments
although criminal in implementation allow for a civil case to become criminal when
criminal intent is involved from start as was operational here. The Eight
Amendment was surely violated as Mother was starved, drugged, and neglected
until dead. She endured a trial, criminal no less, by several doctors, by two lawyers
and a probate judge, and a collection of health care workers who would have tossed
her over a tall waterfall for a $200.00 per quarter pay raise.

46The Ninth and Tenth Amendments were violated in that as any fool knows
someone who like Mother was very caring, worshiped her clients, and was deeply
religious yet afraid to die had a right to live, had a right to be cared for, had a right
to be watched at a facility that charged over $10,000.00 per month so as not to be
allowed to go over a bed rail if that ever did happen, had a right not to be starved,
had a right not to be drugged with narcotics when she suffered from Parkinson's
like MSA, had a right to be placed in a chair and moved about daily, had a right to a
daily or even twice daily bath if needed, and had a right to proper medical
treatment for her pressure ulcers. These are rights not expressly enumerated but
reserved to the person.

47Venue is properly established in this Court because a substantial part of
the events or omissions giving rise to the claims asserted in this suit occurred in
this judicial district.

## FACTS

48Ruth S. Sullivan, (RSS), rolled out of bed and broke her hip and leg on December 13, 2020 at 8:15 PM.  Charles Stanton Sullivan, Jr. (Plaintiff) was not at her side as normal because he had become unusually tired after about five hours of hard work. He was in a chair about ten feet away.  He has had a major stroke that has effects that come and go.

49Later that night,weather was cold and raining. RSS did not go to the hospital until December 14, 2020 in the morning.

50December 15, 2020, as best remembered, was the day of RSS's first operation by Dr. Robert McAlindon.  Mother recovered from her first operation as an alert, mindful, and responsive person.  Plaintiff assumes that orders to restart her Parkinson's medicine did not arrive on time resulting in shakes and dislocation of leg. After the leg was discovered to be dislocated on December 17, 2020, as best remembered, a second operation was necessary performed by Dr. James "Win" Lyle, IV.  Mother was groggy after second operation.  A brace was placed between her legs so as to prevent another dislocation and, she was deemed ready for rehabilitation in mid-December.

51Plaintiff was told that RSS could not go to Regional Rehabilitation in Phenix City, Alabama because she had fought the staff there or on the way there in 2019 when she broke her other leg, was not following orders, and did not have the stamina for such rehab, three hours of continued therapy.  RSS was deemed strong enough to fight but too weak for therapy.

52Plaintiff had spent several weeks at Regional Rehabilitation in 2012 when he had a stroke.  He knows place, their procedures, and possibility of great rehabilitation from personal experience. The description of Regional Rehabilitation by BC\BS does not match facts.

53Plaintiff appealed refusal and was denied.

54While the appeal was in progress, Plaintiff tried to get RSS into Emory and another rehabilitation facility near Birmingham in Tarrant. In discussing matters with BC\BS during this time, Plaintiff found that BC\BS did not know that some facilities were drug only rehabilitation.  When calling the BC\BS offered facility phone number and finding that the facility only did drug rehabilitation, Plaintiff discovered a major flaw in BC/BS's takeover of elder healthcare.  Plaintiff found that BC\BS can only suggest care facilities.  BC/BC appears to know very little about health care facilities.  BC/BS knows costs.

55Someone, at BC\BS, most likely, gave Plaintiff a number for Grady rather than Emory. Much time was wasted on these efforts.

56After the denial, Plaintiff went along with the plan and saw his Mother off to Prattville Health and Rehabilitation, LLC.

57Once at PH&R for six days, RSS was given a CoVid-19 vaccine and allowed to have some rehabilitation in her room if reports are true.

56Plaintiff had warned all doctors and personnel associated with RSS that she has Parkinson's disease and dosing of medicine has to be monitored closely to make sure she remains mentally stable. PLAINTIFF had pointed out actions by RSS that indicated she had been given too much carbodopa levadopa such as sheet rolling, clothes crimping, and wild statements.

59Carbodopa levadopa was necessary to keep RSS still while the leg healed. However, the leg jerking was most prominent at night when RSS was asleep. Therefore, the time to give a larger dose was at night or during the night.

60Plaintiff had become unable to get up and go back to sleep on most nights at 3 am as he was doing for several years because of his stroke but most probably because of the 15 to 18 hours he was spending caring for RSS each day. That problem worked to RSS's favor as any special care could be done during middle of night such as bathroom trips, under ware changes, or supplying a drink. Sometimes dishes were washed.

61While at PH&R, RSS was very difficult to get on the phone and basically in a room by herself all day with medicine possibly given every four hours. This was little different from the hospital.

61While at PH&R, RSS dislocated her leg again on January 12, 2022. Wednesday, January 13, 2021, Plaintiff was informed of sever dislocation.

63RSS has paid the maximum Medicare fee or tax each year since the mid 1960's when Medicare started or since she started as a law clerk in Montgomery for Alabama Appeals Court. Since Wednesday, each day, Plaintiff has called BC\BS, the doctor's office in Opelika, and his brother who is RSS's sponsor while she was at PH&R. Plan was to get RSS to a hospital as fast as possible to avoid damage to the hip and/or leg. Repair the hip as best as possible. Keep RSS still while in a brace and get rehabilitation when appropriate.

64In talking with BC\BS, PLAINTIFF found that the hospital and doctors decide where RSS will go for surgery.  In talking with an uninvolved ambulance service on Friday, January 15th, 2021, PLAINTIFF found that the Opelika hospital, East Alabama Medical Center, and PH&R have to have an agreement for an ambulance to take her from Prattville to Opelika.  No agreement exists.

65As best as PLAINTIFF can tell, someone on the staff at PH&R had decided that RSS will get surgery in Montgomery no matter the ramifications for RSS.  No arrangements were made to get an ambulance for her to travel to Opelika or elsewhere for an X-ray and evaluation.

66An additional problem is information coming from Plaintiff's brother who may fail to provide all details or alter details.  Brother was RSS's sponsor while she was at PH/R because his girlfriend is located nearby and, he could visit RSS daily through a window whereas Plaintiff resides sixty-five (65) miles distant.

67Plaintiff knew of mobile x-rays from his stay at Regional Rehabilitation.  Plaintiff may have had forty x-rays or more while in hospital.  Plaintiff filed suit in Alabama State Court to get, among other reasons, RSS an X-ray as he was repeatedly told by his brother she had not had an X-ray.

68Plaintiff did not call PH/R after RSS's fall over bed rail if he remembers correctly.  He called his brother.

69Mother had been given an x-ray on January 13, 2021.

70Plaintiff knows benefits of a good health care facility.  Other than being unconscious for about thirty-five (35) days a condition that may have resulted from being sedated when trying to leave hospital early in care process, he was treated most favorably by all and had great doctors.  Those are reasons for his being here today as he should have died.

71Something that Plaintiff cannot ascertain occurred to his Mother in hospital and rehabilitation process.  Facilities are tight mouthed about their actions and will not cooperate.

72Finally, after coming home with thirteen or fourteen pressure ulcers, RSS was taken to her neurologist in Atlanta, an orthopedic surgeon in Atlanta, and Columbus Medical Center for possible hip repair that was refused.  These evaluations were preplanned and took place in her first week home. Later and finally, Mother was given a prescription to The Wound Center behind EAMC during

an appointment at University of Alabama Medical Center, Highlands on March 23, 2021.

73While RSS was being treated at home, most of minor pressure ulcers were resolved. However, a new one developed on her recently operated hip. She had four large pressure ulcers of which one was both deep and touching her hip bone. Mother was taken to EAMC twice and UAB once because of pressure ulcer infections.

74She still had one on her left heel. A major one on her right knee was prevented.

75Plaintiff took his Mother to Dr. Samina Uddin a geriatric doctor at UAB Highlands. Plaintiff was told to take RSS by Russell Medical Center or Sylacauga on their way home. He did so. RSS was taken from him at Russell Medical Center by DHR.

76DHR drug out RSS's hearing process. Mitchell Gavin was guardian et litem and conservator. Charles Hall was RSS's attorney. As each of them had been on a losing side with her, they naturally decided to send her to permanent stay at Parkwood. Talmadge East and DHR were front running for Chapman and Dadeville Nursing homes.

77DHR could not find a nursing home to take RSS. Therefore, Plaintiff did an extensive search and found Parkwood that appeared to be an excellent facility from all that was available. A Place for Mom could not help as that business only finds assisted living.

78Not so! Parkwood was RSS's final disaster. There she was drugged, starved, and allowed to die as a result of her treatment. See ATTACHMENT ONE for results of that facility's care and poor hygiene.

79Plaintiff knows all persons will for now ultimately die. Time is of issue in that statement. His problem is that Mother could have survived with proper care.

80He did not see some obvious solutions such as The Wound Center because of daily challenges presented by his Mother. She did three hospital stays for infections prior to final nursing home stay.

81Proper care was not given or even not known by Prattville and Parkwood. Plaintiff had to do a fast learn on all of his Mother's care while being stressed to

extremes by her condition. Prattville did not send any instructions for care with Mother when she returned from Prattville.

82Mother was periodically mentally unsound in her last nine months. However, she was totally sane most of a day. Problems came on at night. Other problems came when she had to get out of bed and walk. For Plaintiff, these problems were minor. However, at hospitals UAB and EAMC, these problems must have been more than staff could handle because UAB was first to write her off and EAMC was writing her off when she first came back after trip to Atlanta to see Dr. Singh. People do not want to care for other people no matter where they work hospital or local landfill.

83Meat had to be cut small to prevent choking. At EAMC, Mother was feed ground food for her consumption because staff was too busy to fork feed her that was not necessary if she had been placed in chair to eat. She ate in bed. She wore a hospital gown. Her clothes were not used only stolen at EAMC, Russell, and Parkwood.

84Mother lay in bed 24 hours per day wherever she was Prattville or Parkwood or hospitals. Plaintiff always made her walk around her house when she broke her first leg. She came back in such bad shape from Prattville that Plaintiff had to carry her around.

**PLEADINGS**

85The story Plaintiff has been told is that all beds are full in Montgomery, Alabama at all hospitals therefore surgery will have to wait. Plaintiff has been told that all ambulances are busy. The ambulance story is a lie.

86Plaintiff told BC\BS to get RSS to UAB in Birmingham if available or Emory if UAB is full and stop risking her future ability to walk by waiting in Montgomery for an open bed or whatever is needed there for her surgery. In addition, Plaintiff offered to pay for an ambulance of BC/BS's or PH&H's choice when decision was made to take RSS back to Opelika. Offer was not considered.

87In prior state suit, Plaintiff mentioned that Doctors were available and waiting in Opelika. However, at that point, the best doctor should see RSS, and do what is needed to cure the dislocation. Therefore, UAB or Emory or even RSS's college where she graduated, Vanderbilt, should be used for her recovery.

88Where RSS was treated, Doctors and staff were warned of the problems she had with Parkinson's medicine and mental state that has been the case since

late 2019. A balance between mental state and leg jerking had to be carefully obtained.

89RSS was a sever fall risk as Plaintiff has kept her from falling well over a hundred times and has caught her on some double falls and one triple fall when she came within a few inches of the concrete walkway in Dadeville.

90Care givers showed disregard for RSS.

91RSS was allowed to languish at Parkwood where she was not fed, drugged, and not properly cared for by staff. Death was the result. Such a fate only came about by DHR and Probate Judge deciding to do this to her instead of allowing her to remain at home.

92At home she would have had baths, been allowed to sit in a chair, been fed if needed, have good food, read, talk, even go to her office (something Probate Judge wanted to stop most likely), go to Wound Center, not have exposure to nursing home infections, and die at home if that was her fate.

93Plaintiff is not able to mail Complaint to all and can only prepare one Summons due to his thinking that lawyer he sent attached photographs to would take case last week. That thinking was false and delayed his start on case. Many of them talk a good talk but do not perform.

**WHEREFORE**, the above premises considered, Plaintiff prays this Court take jurisdiction of this cause; that this Court cause State's process to issue requiring Defendants, to plead, answer and appear within the time prescribed by law; considering PH&R letting her go over the rail after a co-vid vaccination; the lack of progress at PH&R in getting needed medical help for RSS; BC\BS's failure or refusal or lack of authority to order a surgery for RSS; EAMC's refusal to welcome her return when she had infections; DHR's,.Judge of Probate's,and two attorneys'effort to institutionalize her; Parkwood's efforts to drug her, starve her, and mishandle her care; and considering other complaints, some in this Complaint, Plaintiff prays for a judgment in his favor substantially above S75,000.00 so that he may set up an organization to monitor assisted living and nursing homes and that upon final hearing this Court grant such other, further and different relief as may be meet, just, and proper in the premises.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

_Charles Stanton Sullivan, Jr. Pro Se_

Charles Stanton Sullivan, Jr. Pro Se

P. O, Box 332

Dadeville, AL 36853

256-825-6365

334-734-6198 cell

sullivnaruths@bellsouth.net

## CERTIFICATE OF SERVICE

I, Charles Stanton Sullivan, Jr, pro se, the Plaintiff, hereby certify that I have this day served a copy of the above and foregoing pleading upon:

EAST ALABAMA HEALTH CARE AUTHORITY d/b/a EAST ALABAMA MEDICAL CENTER ,EAST ALABAMA MEDICAL CENTER SKILLED NURSING FACILITY, EAMC-LANIER EMERGENCY MEDICAL SERVICES

Ms. Lauri Grill 2000 Pepperell Parkway Opelika, Alabama 36801

by placing a copy of the same in the U.S. Mail, postage prepaid, addressed to them, this the 15ʰ day of December, 2022.

Charles Stanton Sullivan, Jr. Pro Se

Ruth S. Sullivan
Attorney at Law
P.O. Box 332
Dadeville Al
    36853

Ms. Debra P. Hackett
Clerk of Court
United States District Court
Middle District Alabama