IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES STANTON SULLIVAN, JR., | ) | |
| as personal representative for the estate of | ) | |
| Ruth S. Sullivan, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-cv-702-RAH-JTA |
| | ) | (WO) |
| PRATTVILLE HEALTH AND | ) | |
| REHABILITATION, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Before the court are *pro se* Plaintiff Charles Stanton Sullivan, Jr.'s four most recent Motions to Continue (Docs. No. 156, 158, 159, 160), his Motion to Explain Lack of Progress (Doc. No. 161), his Explanation for Delay (Doc. No. 162), and his Motion to Show Arm Damage (Doc. No. 163). For the reasons stated below, Plaintiff's April 9, 2024 Motion to Continue (Doc. No. 156) is DENIED. The remaining three Motions to Continue (Docs. No. 158, 159, 160), the Motion to Explain Lack of Progress (Doc. No. 161), the Explanation for Delay (Doc. No. 162), and the Motion to Show Arm Damage (Doc. No. 163) are CONSTRUED as motions for extension of time and as motions for leave to amend the complaint, and they are also DENIED.

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE that this action be dismissed for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure and the orders of this court.

# I.    JURISDICTION

This court has subject matter jurisdiction over this action based on federal question jurisdiction, as some of Plaintiff's causes of action arise under the Constitution and laws of the United States. 28 U.S.C. § 1331. Jurisdiction over any state law claims is exercised pursuant to 28 U.S.C. § 1367(a).

This action has been referred to the undersigned pursuant to 28 U.S.C. § 636 "for further proceedings and determination or recommendation as may be appropriate." (Doc. No. 5.)

# II.    STANDARD OF REVIEW

"A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc*., 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991)). Consistent with this authority, and also pursuant to Rule 41(b)[1] of the Federal Rules of Civil Procedure, "the court may dismiss a plaintiff's action *sua sponte* for failure to prosecute or failure to comply with the Federal Rules of Civil Procedure or a court order." *Centurion Sys., LLC v. Bank of New York Melon*, No. 8:21-CV-726-SDM-AAS, 2021 WL 7448071, at *1 (M.D. Fla. Aug. 12, 2021) (citing *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983)), *report and recommendation*

---

[1] Though Rule 41(b) refers specifically to dismissal on a defendant's motion, "[a] federal district court has the inherent power to dismiss a case *sua sponte* under Federal Rule of Civil Procedure 41(b) if the plaintiff fails to comply with a court order." *Rodriguez v. Lawson*, 848 F. App'x 412, 413 (11th Cir. 2021) (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005)).

*adopted sub nom. Centurion Sys., LLC v. Bank of New York Mellon*, No. 8:21-CV-726-SDM-AAS, 2021 WL 7448080 (M.D. Fla. Aug. 27, 2021). "Included within this inherent power is the authority to 'impose formal sanctions upon dilatory litigants.'" *Nurse v. Sheraton Atlanta Hotel*, 618 F. App'x 987, 989 (11th Cir. 2015) (quoting *Mingo v. Sugar Cane Growers Co–op. of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989)). "'The power to invoke this sanction [of dismissal] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the [d]istrict [c]ourt.'" *Equity Lifestyle*, 556 F.3d at 1240 (quoting *Durham v. Fla. E. Coast Ry. Co*., 385 F.2d 366, 367 (5th Cir. 1967));[2] *see also* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Chambers*, 501 U.S. at 43 (holding that federal courts are vested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Whether to dismiss a complaint under Rule 41(b) "is a matter committed to the district court's discretion." *Id*. at 1240 n.14 (citing *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999)). "The legal standard to be applied under Rule 41(b) is whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)

---

[2] *In Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(quoting *Jones*, 709 F.2d at 1458). Further, if a court finds a clear record of delay or contumacious conduct by the plaintiff, dismissal for failure to comply with court orders may be a dismissal with prejudice. *See McKinley v. F.D.I.C.*, 645 F. App'x 910, 911 n.3 (11th Cir. 2016) (citing *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986)). "[S]uch dismissal [with prejudice] is a sanction of last resort, applicable only in extreme circumstances, and generally proper only where less drastic sanctions are unavailable." *McKelvey*, 789 F.2d at 1520.

## III.   FACTS AND PROCEDURAL HISTORY

On December 15, 2022, Plaintiff filed this action asserting various causes of action against seventeen different Defendants for different acts and omissions related to his late mother's hospitalization and death. (Doc. No. 1.) On January 17, 2023, he filed an Amended Complaint prior to any Defendant serving an answer or other response. (Doc. No. 4.)

From the outset of this litigation, Plaintiff has sought numerous extensions of time to meet court deadlines for reasons such as health and memory problems, "his many travails with his farm, car problems, loose cattle, rental property repair issues, computer glitches, inclement weather, hot weather, cold weather, broken fencing, busy friends or neighbors who cannot help [or whose help Plaintiff declined for fear they would arrive to help by driving under the influence], broken borrowed four wheelers, financial issues, checkbooks and credit cards falling out of Plaintiff's pockets into the floorboard and between a seat in a vehicle, ongoing litigation in other courts, etc." (Doc. No. 108 at 3 and n.1.) On some occasions, the court granted Plaintiff extensions of time, generally with stern warnings

about the necessity of complying with court deadlines and of moving the case along. (*E.g.*

Docs. No. 27, 86, 108, 155.) At other times, usually after leniency[3] had already been

afforded Plaintiff at least once or twice, the court denied his motions to continue or for

extensions of time. (*E.g.*, Docs. No. 89, 93, 118, 137.)

> The court has explained to Plaintiff that

> [t]his is Plaintiff's lawsuit. He has chosen, as is his right, to file it against
> seventeen different Defendants. However, it is his responsibility to comply
> with the rules and deadlines set by the court. The case will not move forward
> if Plaintiff's ongoing trials and tribulations cause months of delay at every
> turn because Plaintiff does not have time to work on his briefs and participate
> in the litigation amid the many vicissitudes of life. It is the court's duty to
> achieve the orderly and expeditious disposition of cases, and it is Plaintiff's
> duty to figure out how to make time for this lawsuit if he wishes to pursue it.
> *Chambers*, 501 U.S. at 43; *Johnson v. Champions*, 990 F. Supp. 2d 1226,
> 1236 n.16 (S.D. Ala. 2014) ("[E]ven *pro se* litigants must comply with
> procedural rules and court orders." (citations omitted)).

(Doc. No. 108 at 3-4 (granting a motion for extension of time not because Plaintiff carried

his burden to show good cause or excusable neglect, but because the court preferred to

enter a recommendation on the merits, if possible, after all parties were heard).)

On February 16, 2024, the court ordered Plaintiff to file a Second Amended

Complaint on or before March 25, 2024.[4] (Doc. No. 137 at 19.) The court explained that

---

[3] The court has shown Plaintiff leniency not only by allowing extensions of time in various
instances, at times even longer than Plaintiff requested, but also by building extra time into court-
ordered deadlines at the outset in anticipation of Plaintiff's many travails. (*See*, *e.g.*, Doc. No. 93,
Doc. No. 118 at 2 n.1.)

[4] Given the shotgun nature of Plaintiff's previous pleadings in this case and his proclivity to name
numerous Defendants and include many factual allegations in his pleadings, the court found that
it was obliged to *sua sponte* exercise its inherent duty and responsibility to manage its docket,
ensure that the issues subject to litigation are clearly delineated, prevent extended and aimless
discovery, protect the record from accumulating cumbersome and unnecessary mass, and
efficiently allocate judicial resources. *See Maglula v. Samples*, 256 F.3d 1282, 1285 (11th Cir.

Plaintiff's complaint was a shotgun complaint and provided appropriately detailed instructions for filing a proper complaint. (*Id*. at 19-23.) The court also advised Plaintiff "*that failure to file a Second Amended Complaint in compliance with the requirements of this Order may constitute grounds for dismissal for failure to prosecute this case and for failure to comply with the court's orders*." (*Id*. at 23 (emphasis in orginal).)

In setting the March 25, 2024 deadline to file a Second Amended Complaint, the court provided more time than it would normally afford a *pro se* plaintiff because it anticipated that Plaintiff would, as usually happens, seek additional time due to the incessant onslaught of Job-like vicissitudes that invariably beset him. (*Id*. at 19 n.5.) Viewed another way, the court anticipatorily provided Plaintiff an extension of time for good cause, having already considered all Plaintiff's usual ongoing reasons for being unable to comply with the deadlines that are regularly imposed on other litigants.

---

2001) (directing the district court on remand to strike the shotgun complaint "and require a repleading of all claims in a complaint that respects the requirements" of the Federal Rules of Civil Procedure); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (emphasizing the court's "power and duty" to intervene *sua sponte* in cases of shotgun pleading to narrow the issues and "prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined"); *Reese v. Weidplas N. Am.*, *LLC*, No. 3:18-cv-793-WKW-SRW, 2019 WL 13299344, at *3 (M.D. Ala. 2019) ("The district courts have the inherent authority to require plaintiffs to define the scope of their claims and, indeed, it is the courts' duty to do so at the earliest practicable stages of litigation."); *Hatfield v. Cadence Bank*, No. 3:23-cv-202-RAH-JTA, September 8, 2023 Order (Doc. No. 24 at 3-4) (collecting cases and explaining the court's inherent power and duty to ensure that the pleadings are not "so deficient as to risk significantly inhibiting joinder of the issues, trial, and effective case management," even where the complaint is not subject to review under 28 U.S.C. § 1915(e)(2)(B)); *see also Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 n.5 (11th Cir. 1996) (noting that, where defendants opted not to move for a more definite statement, "on examining [the] pleadings, the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement" because the complaint so failed to comply with the rules of pleading that it prevented effective joinder and disposition of the relevant issues in the case).

"**THEREFORE**," the court cautioned, "**NO FURTHER EXTENSIONS WILL BE ALLOWED ABSENT COMPELLING, EXTENUATING CIRCUMSTANCES**." (*Id.* (emphasis in original).)

On March 27, 2024, Plaintiff moved for an extension of time to file his Second Amended Complaint. (Doc. No. 154.) He indicated that, in addition to the usual ongoing challenges with his health, cattle, and personal affairs, he was delayed in filing the Second Amended Complaint because of last-minute computer problems and because he contracted food poisoning on the day the Second Amended Complaint was due. (*Id.*) He provided a detailed account of how the food poisoning incident diverted his energies in the waning hours available to him to file his Second Amended Complaint. (*Id.*) He stated that he thought twelve additional hours would be sufficient to allow him to file his amended pleading. (*Id.*)

On April 3, 2024, the court granted Plaintiff's motion for extension of time and provided him not only the requested twelve-hour extension, but until April 12, 2024 – nearly three weeks of additional time beyond the March 25, 2024 deadline – to complete and file his Second Amended Complaint. (Doc. No. 155.) The court did this partly because it anticipated a few days' delay in Plaintiff's receipt of the order by mail, but more so because the court observed that Plaintiff's March 27, 2024 motion for extension of time strongly suggested that the Second Amended Complaint likely exceeded 100 pages and would probably contain features of a shotgun complaint. Accordingly, the court stated that it "expect[ed] that Plaintiff w[ould] not only use the additional deadline extension to print, collate, and file the Second Amended Complaint, but also to first review the document and

determine if any revisions are needed to ensure that it meets the basic pleading requirements of which he has already been advised." (*Id*. at 2-3.) The court specifically reminded Plaintiff not to file a shotgun complaint and reiterated the requirements of a well-pleaded complaint. (*Id*. at 2.) In addition, the court stated that "**ABSOLUTELY NO FURTHER EXTENSIONS WILL BE ALLOWED ABSENT COMPELLING, EXTENUATING, UNAVOIDABLE CIRCUMSTANCES BEYOND PLAINTIFF'S CONTROL**." (*Id*. (emphasis in original).) Finally, the court again advised Plaintiff that "*failure to timely file a Second Amended Complaint in compliance with the requirements of this Order and the February 16, 2024 Order (Doc. No. 137) may constitute grounds for dismissal for failure to prosecute this case and for failure to comply with the court's orders*." (Doc. No. 155 at 3 (emphasis in original).)

On April 9, 2024, Plaintiff filed another Motion to Continue in which he sought more time to file his Second Amended Complaint, which he stated had "ballooned to one hundred and sixty-six pages as of March 25th, 2024." (Doc. No. 156 at 4.) Plaintiff acknowledged that, "[t]oday, sadly, Plaintiff does not know how long finishing Complaint will take." (*Id.* at 6.)

Before the court ruled on Plaintiff's April 9, 2024 Motion to Continue, however, Plaintiff timely filed his Second Amended Complaint on April 13, 2024. (Doc. No. 157.) It is four hundred and eight pages long. (*Id*.)

Between April 19, 2024 and May 1, 2024, Plaintiff filed three more Motions to Continue (Docs. No. 158, 159, 160) seeking additional extensions of time to amend his complaint.

8

On May 10, 2024, Plaintiff filed a Motion to Explain Lack of Progress, in which he again requested "an extension" of time to amend his complaint. (Doc. No. 161.)

On May 24, 2024, Plaintiff filed a document titled "Explanation for Delay", which again sought additional time to amend. (Doc. No. 162.)

On May 28, 2024, Plaintiff filed a document titled "Motion to Show Arm Damage," again requesting additional time to amend. (Doc. No. 163.)

## IV.   DISCUSSION

A.   April 9, 2024 Motion to Continue (Doc. No. 156)

Plaintiff's April 9, 2024 motion to continue was filed prior to the expiration of the deadline to which it was addressed. (Doc. No. 156.) However, Plaintiff thereafter complied with that deadline and timely filed his Second Amended Complaint. (Doc. No. 157.) Thus, his April 9, 2024 motion to continue is due to be denied as moot.

B.   Plaintiff's April 19, April 29, and May 1, 2024 Motions to Continue; Plaintiff's May 10, 2024 Motion to Explain Lack of Progress; Plaintiff's May 24, 2024 Explanation for Delay; Plaintiff's Motion to Show Arm Damage (Docs. No. 158, 159, 160, 161, 162, 163)

Though he filed his Second Amended Complaint on April 13, 2024, Plaintiff continues to file motions seeking more time to file another amended complaint based on new developments worsening his ongoing series of difficulties. (Docs. No. 158, 159, 160, 161, 162, 163.) These motions were filed after the extended deadline for filing the Second Amended Complaint, and after Plaintiff filed the Second Amended Complaint.

Viewed as motions for leave to file another amended complaint outside the previously extended deadline for doing so, Plaintiff's motions fail. He acknowledges that

"[t]ime will not solve problem for him as spending too much time sitting, reading, and typing is problem." (Doc. No. 158 at 6 (sic).) On the whole, the usual issues keeping Plaintiff from being able to prosecute his case have not improved enough to warrant optimism that Plaintiff will be able to submit an amended pleading within a reasonable time. Although some new issues involving a tax deadline and playing the Powerball lottery have been alleviated (at least temporarily), and although and chasing loose cattle has "cured some of [Plaintiff's] leg problems," he is also faced with the need to mark timber for sale[5] and he continues to face new injuries. (Doc. No. 158, 161, 162, 163.) Cattle, which "are unfortunately [Plaintiff's] priority," continue to break down fences, requiring Plaintiff's vigilant efforts to recover them before they are stolen, injured, or lost, and to perpetually repair the fences. (Doc. No. 162 at 5; *see also* Doc. No. 163.) Nevertheless, Plaintiff acknowledges that his Second Amended Complaint is "overlong" and seeks an unspecified amount of additional time to file an amended pleading. (*See* Doc. No. 158 at 8; Doc. No. 162 at 6-7; Doc. No. 163 at 21.)

Yet, again, there is no indication that Plaintiff can complete a compliant pleading by any particular date certain, or that merely affording Plaintiff more time would yield a sufficiently useful amended pleading. In his April 19, 2024 motion, Plaintiff estimated that the "end of this weekend [*i.e.*, the weekend ending April 21, 2024] will be enough time to finish and organize his Complaint." (Doc. No. 158 at 8.) Yet, in his subsequent motion filed April 29, 2024, he indicated that all of his ongoing issues had worsened in one way

---

[5] Plaintiff states that he has "about forty-five acres left to go" before he can complete the marking of timber. (Doc. No. 161 at 7.)

or another and states that, "[a]s of today, Wednesday, April 24th, 2024, Plaintiff has not been able to complete his Complaint." (Doc. No. 159 at 1.) Plaintiff stated that he thought "the end of this coming weekend [*i.e.*, the weekend ending April 28, 2024] might be enough time to finish and organize his Complaint." (*Id*. at 9.) On May 1, 2024, Plaintiff again filed a motion to continue in which he stated that, due to his ongoing issues, "[a]s of today, Sunday[,] April 28th, 2024, [he] has been completely preoccupied with fencing his cattle in his two pastures and was not able to complete [the] Complaint." (Doc. No. 160 at 2.) He stated that he "th[ought the] end of this coming week might be enough time to finish and organize [the] Complaint." (Doc. No. 160 at 5.) On May 10, 2024, he filed a document indicating that, at least for the moment, he was experiencing a reprieve of some of his ongoing issues, but others (such as the need to mark timber) persisted in demanding his time and attention. (Doc. No. 161.) He acknowledged that he still "ha[d] not been able to complete his Complaint" due to "sparse time" to work on it. (*Id*. at 1-2 ¶¶ 1-2.) In his May 10, May 24, and May 28, 2024 motions (Docs. No. 161, 162, 163), he explained numerous new and ongoing tribulations that prevented his completion of an amended pleading, but he provided no estimate as to how much more time he would need to amend the complaint. Neither did he indicate any reliable basis on which to predict when he might be able to complete an amended pleading.

Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure requires a showing of good cause and excusable neglect for extending a deadline when a motion for extension of time is filed after the deadline in question has passed. Further, the terms of the previous order allowing Plaintiff an extension required a showing of "compelling" circumstances. (Doc.

No. 155 at 2.) Additionally, when ruling on a motion for extension of time or for leave to file a document out of time, the court can take into consideration previous extensions of time, and it has a duty to consider its power and responsibility to manage its docket. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 864 (11th Cir. 2004); *see also* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (holding that federal courts are vested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). "This power is necessary for the court to administer effective justice and prevent congestion." *Young*, 358 F.3d at 864. As the Eleventh Circuit has explained,

> In the courts, there is room for only so much lenity. The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public, including those persons affected by the court's increasingly crowded docket.

*Id*.

In court, "[d]eadlines are not meant to be aspirational." *Id*. They exist so that the court can move the case forward while allowing a full and fair opportunity to be heard. Therefore, a *pro se* party must take responsibility for the obligations to which he committed when he filed the case and complete his required filings by the applicable deadlines. *Shivers v. Cellulose*, No. CV 15-0429-WS-M, 2016 WL 7015654, at *1 (S.D. Ala. Nov. 29, 2016) ("Even *pro se* litigants are expected to comply with court orders, deadlines[,] and rules."

12

(collecting cases)). As the court has previously explained to Plaintiff, this is his case, and it is his responsibility to prosecute it. (Doc. No. 108 at 3-4 ("[I]t is Plaintiff's duty to figure out how to make time for this lawsuit if he wishes to pursue it.").)

The history of this litigation, including Plaintiff's struggle to timely amend his complaint, demonstrates that Plaintiff is not capable of litigating this case on any reasonable timeline. The court is not insensitive to the many difficulties Plaintiff continues to face. However, the court must also consider its obligation to manage its own affairs to achieve the orderly disposition of this action, the equities to Plaintiff and to the multiple defendants and their counsel, and how further continuances will affect the needs of the public and the other litigants in this court, particularly in this time of judicial emergency. It does not appear that a further extension will enable Plaintiff to file a short, plain statement of his claims by a reasonable deadline, but it will cause delay on the court's docket and prejudice the numerous Defendants in their ability to move forward with their defense of the case. Even if Plaintiff could somehow meet a deadline to file a Third Amended Complaint (and he has not shown that he can), the history of this case has shown that the case cannot move forward with reasonable efficiency, as "Plaintiff's ongoing trials and tribulations cause months of delay at every turn because Plaintiff does not have time to work on his briefs and participate in the litigation amid the many vicissitudes of life." (Doc. No. 108 at 3-4.)  Defendants are not expected to wait indefinitely at every juncture in this lawsuit for Plaintiff to first wrangle his cattle, finances, other litigation, health, and other matters. As of May 28, 2024, Plaintiff still remains unable to complete his Complaint do to his many ongoing problems. (Doc. No. 163 (explaining new injuries, reiterating

continuing efforts to recover missing cattle, providing photographs of Plaintiff's recently injured arm and a calf that had allegedly been mauled to death and partially eaten by dogs, and stating that "[a]s of today, Wednesday May 22, 2024, Plaintiff has not been able to complete his Complaint").) The court concludes that, under the circumstances, good cause has not been shown for the requested extension, and Plaintiff's post-deadline motions to continue are due to be denied under Rule 6(b)(1)(B).

Viewed alternatively as motions for leave to amend Plaintiff's pleadings once more, his April 19, April 29, and May 1, 2024 Motions to Continue, his May 10, 2024 Motion to Explain Lack of Progress, his Explanation for Delay, and his Motion to Show Arm Damage (Docs. No. 158, 159, 160, 161, 162, 163) are still due to be denied. These motions, as well as the history of this litigation, demonstrate that he would not be able to complete another pleading within a time certain while complying with the requirements of a short, plain statement of his claims. In that sense, an opportunity to amend would be futile. Additionally, allowing further opportunities to amend will interpose delay and prejudice to the Defendants, who have already waited through multiple delays for Plaintiff just to clearly plead his claims. Accordingly, as motions for leave to further amend the pleadings, Plaintiff's April 19, April 29, and May 1, 2024 Motions to Continue, his May 10, 2024 Motion to Explain Lack of Progress, his Explanation for Delay, and his Motion to Show Arm Damage (Docs. No. 158, 159, 160, 161, 162, 163) are due to be denied. *See Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022), *cert. denied sub nom. Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) (holding that, under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend should be freely given and should

14

be given "at least once" except in certain circumstances, including "where there has been undue delay ... or repeated failures to cure deficiencies by amendments," "where allowing amendment would cause undue prejudice to the opposing party," and "where amendment would be futile"); *see also Kabbaj v. Obama*, 568 F. App'x 875, 879-80 (11th Cir. 2014) (holding that a district court is not required to allow a *pro se* litigant subsequent opportunities to amend, if, when given previous opportunities to amend, the plaintiff repeatedly failed to cure his shotgun pleading's deficiencies).

C.    The Second Amended Complaint (Doc. No. 157)

"Complaints that violate either Rule 8(a)(2) or Rule 10(b) [of the Federal Rules of Civil Procedure], or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). "All shotgun pleadings share two characteristics in common." *Dorman v. Palm Beach Cnty.*, No. 19-81538-CIV, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020). First, shotgun complaints "'fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Id.* (quoting *Weiland*, 792 F.3d at 1323). Second, shotgun complaints "'waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)). As the court has previously explained to Plaintiff, the Eleventh Circuit has defined shotgun pleadings as follows:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count

adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland*, 792 F.3d at 1323 (footnotes omitted).

"Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). At the same time, "the court is obliged to *sua sponte* exercise its inherent duty and responsibility to manage its docket, ensure that the issues subject to litigation are clearly delineated, prevent extended and aimless discovery, protect the record from accumulating cumbersome and unnecessary mass, and efficiently allocate judicial resources." (Doc. No. 137 at 13.) Therefore, as the court previously indicated[6] when it ordered Plaintiff to file the

---

[6] The court expressly forewarned Plaintiff that failure to file a Second Amended Complaint that complied with the applicable pleading requirements "*may constitute grounds for dismissal for failure to prosecute this case and for failure to comply with the court's orders*." (Doc. No. 137 at 23 (emphasis in original); (*see also id.* at 14 ("*Failure to comply with the pleading instructions in this Order may result in dismissal of this action for failure to comply with court orders and the Federal Rules of Civil Procedure*." (emphasis in original); Doc. No. 155 at 3 ("*Plaintiff is ADVISED that failure to timely file a Second Amended Complaint in compliance with the requirements of this Order and the February 16, 2024 Order (Doc. No. 137) may constitute grounds for dismissal for failure to prosecute this case and for failure to comply with the court's orders*." (emphasis in original).)

Second Amended Complaint, that duty requires the court to dismiss a shotgun complaint where necessary to achieve those objectives, and where less drastic alternatives are unavailing. (*Id.* at 12-14, 23.) *See Magluta v. Samples*, 256 F.3d 1282, 1285 (11th Cir. 2001) (directing the district court on remand to strike the shotgun complaint "and require a repleading of all claims in a complaint that respects the requirements" of the Federal Rules of Civil Procedure); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (emphasizing the court's "power and duty" to intervene *sua sponte* in cases of shotgun pleading to narrow the issues and "prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined"); *Reese v. Weidplas N. Am., LLC*, No. 3:18-cv-793-WKW-SRW, 2019 WL 13299344, at *3 (M.D. Ala. 2019) ("The district courts have the inherent authority to require plaintiffs to define the scope of their claims and, indeed, it is the courts' duty to do so at the earliest practicable stages of litigation."); *Hatfield v. Cadence Bank*, No. 3:23-cv-202-RAH-JTA, September 8, 2023 Order (Doc. No. 24 at 3-4) (collecting cases and explaining the court's inherent power and duty to ensure that the pleadings are not "so deficient as to risk significantly inhibiting joinder of the issues, trial, and effective case management," even where the complaint is not subject to review under 28 U.S.C. § 1915(e)(2)(B)); *see also Anderson*, 77 F.3d at 367 n.5 (noting that, where defendants opted not to move for a more definite statement, "on examining [the] pleadings, the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement" because the complaint so failed to comply with the rules of

pleading that it prevented effective joinder and disposition of the relevant issues in the case).

Therefore, the Second Amended Complaint is before the court *sua sponte* for determination of whether it constitutes a shotgun pleading or whether it is sufficiently pled to define the issues in this case and comply with the Federal Rules of Civil Procedure and this court's previous orders. (*See* Doc. No. 137, February 16, 2024 Order, at 12-14 (collecting cases and exercising the court's obligation to *sua sponte* ensure the sufficiency of the pleadings and ordering Plaintiff to amend his complaint)). It does not. The court understands that Plaintiff has labored to draft a complaint despite memory difficulties caused by a stroke, and that is why the court has granted him significant leniency in allowing him to amend his complaint. Still, as a practical matter, without a complaint that adequately states Plaintiff's claims, this case cannot move forward. Unfortunately, the Second Amended Complaint, at 408 pages long, "def[ies] a common understanding of a 'short, plain statement' of his claims."[7] *Poulos v. Regions Bank, Inc*., No. 8:15-CV-888-T-27TBM, 2015 WL 12860562, at *1 (M.D. Fla. July 23, 2015); *see also Dorman*, 2020 WL 2078527, at *2 (recognizing that, while not all shotgun pleadings are lengthy, the "'paradigmatic' shotgun pleading[] consist[s] of sprawling pages of endless, loosely-

---

[7] The undersigned has made every attempt to accurately and fairly portray Plaintiff's Second Amended Complaint. If the undersigned has misunderstood any of Plaintiff's claims or allegations, any such misunderstanding springs from the manner in which the claims are pled and only underscores the pleading deficiencies.

related allegations"). The Second Amended Complaint is rife with irrelevant,[8] speculative,[9] and at times irreverent[10] statements that do not obviously support any particular claim against any particular Defendant and that obfuscate Plaintiff's claims. Against twenty Defendants[11] allegedly involved in multiple conspiracies, Plaintiff asserts seventeen counts. The pervasiveness of cryptic, vague, rambling, conclusory, and at times contradictory[12] allegations render it impossible to understand the legal and factual basis of

---

[8] (*E.g.*, Doc. No. 157 at 54 ¶ 122 (discussing the uselessness of sitters); *id.* at 54-55 ¶ 123 ("Plaintiff knows of a woman who had everything, and Plaintiff means everything, going for her, and she did not graduate from Vanderbilt, died. There are no guarantees."); *id.* at 157 ¶ 148 ("More follows in above case but certain facts can be concluded. First, artificial intelligence will remove these discrepancies from regulation, law, and regulation versus law. Second, regulators will write in as much control beyond law as suits their agenda. Third, application of a chip in every citizen will end this violation of law and regulation. Does any group of people desire the third or even second aspect of control applied to them?"); *id.* at 63 ¶ 152 ("Finger twiddling and nose twitching by administrative Courts although interesting and a good logical exercise have no place now.... Judge Adams will remember for the ages if she should enjoin HHS and CMS and issue an injunction to subject HHS and CMS law and regulations to artificial intelligence review not revision."); *id.* at 64 ¶ 154 (Plaintiff's explanation of how artificial intelligence works).)

[9] (*E.g.*, Doc. No. 157 at 78 ¶ 205 ("Who Maximus did consult is extremely relevant to this cause. Was it social worker at EAMC, Dr. Gunter, other doctors at EAMC, physical therapy at EAMC? Plaintiff does not know.").)

[10] Though Plaintiff is understandably upset about the alleged misconduct of Defendants, Plaintiff's pleading is in places unnecessarily and inappropriately impertinent. (*E.g.*, Doc. No. 157 at 13 ¶ 6 (attempting a joke about the skin tone of someone who is not a party to the lawsuit); *id.* at 32 ¶ 67 (alleging that "Defendant Prattville got to run a concentration camp for a couple of years"); *id.* at 183 ¶ 525 (describing a lawyer as representing his client "like a human tombstone").) Casting aspersions with such language is inappropriate in pleadings in federal court.

[11] Among the named defendants is "Unknown Amedisys Nurse." (Doc. No. 157 at 1.) "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

[12] For example, the Second Amended Complaint contains an allegation that Defendant "Charles Hall, although giving a one[-]word input at hearing, probably is not involved in this conspiracy as he was/is a friend of Mother and her family." (Doc. No. 157 at 12 ¶ 5.) Elsewhere, however, Plaintiff describes Defendant Hall as being a participant in Defendant East's "cabal" that allegedly

Plaintiff's claims to the extent necessary to identify all the causes of action against each Defendant and the factual and legal grounds upon which each claim rests.

For example, Count One of the Second Amended Complaint is expressly asserted against Defendant Prattville Health and Rehabilitation, Inc. However, it also includes some allegations of misconduct by Defendants EAMC and Parkwood Health Care Facility, thus making it difficult to determine precisely which Defendants are subject to which claims in Count One. (Doc. No. 157 at 52-77, ¶¶ 44, 115; *see* Doc. No. 13 at 22 (ordering that, for Plaintiff's Second Amended Complaint, "as to each separate legal claim, Plaintiff shall expressly name which Defendants are allegedly liable to him.").) Count One alleges numerous causes of action including what appear to be various common law torts, several different counts of medical malpractice, violations of constitutional rights, Sherman Act conspiracy claims, and over fifty violations of the implementing regulations, 42 C.F.R. § 483, of the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C § 1396r and 42 U.S.C. § 1395i-3. (*See* Doc. No. 137 at 22 (ordering that Plaintiff's "Second Amended Complaint must set out Plaintiff's legal claims in separate counts, with one claim per count, referencing the specific allegations of fact that support each legal claim.").)

Moreover, some of the assorted claims collected in Count One themselves implicate shotgun pleading problems by being vague and cryptic; thus Plaintiff has created shotgun pleading issues within shotgun pleading issues. (*See*, *e.g.*, Doc. No. 157 at 32 ¶ 64 (alleging

---

conspired to unlawfully commit Plaintiff's mother to substandard nursing home care. (*Id*. at 193 ¶ 573; *see also, e.g., id.* at 204 ¶ 621 (accusing Defendant Hall of being a participant in a "hidden agenda and schema [sic] to take Mother and rule on her estate"); *id*. at 228 ¶¶ 706-07 (continuing accusations of conspiracy against Defendant Hall).)

that "§483.10(g)(5)(i) and (ii) in particular were violated as Plaintiff received no notice of these possible courses of action," without any further explanation); *id.* at 32 ¶ 65 (alleging merely that "§483(g)(7)(i) was certainly violated," without explaining who violated that code section or how).) *See Dorman*, 2020 WL 2078527, at *2 (explaining that claims asserted without "even the most basic factual development" leave the court and the parties "to divine what happened," causing "precisely the kind of drain on 'judicial resources'" that prohibitions on shotgun pleading are designed "to forestall"). Other claims in Count One implicate shotgun pleading problems because they are not clearly connected to a particular, identifiable set of discrete facts. (*E.g.*, Doc. No. 157 at 51 ¶ 113 (Plaintiff's claim that his "[m]other's Tenth Amendment right to live without being either constantly harmed or killed was violated by Prattville. This is a substantive right that needs to be addressed and put forth by a Court soon as people have gone Wild West in [the] United States."); *id.* at 51 ¶ 114 (alleging that Plaintiff's "[m]other's due process rights as mentioned somewhere above were violated because her care at Prattville was basically a decision made in favor of money and against her life or well[]being by those who own o[r] work for Prattville," without specifying which specific due process rights mentioned "somewhere" in the preceding fifty pages were invoked or which of the numerous "decision[s]" by Prattville, as described throughout the previous one hundred individually numbered paragraphs, were allegedly violative of his mother's due process rights).)

As the Second Amended Complaint proceeds to other Counts in the aftermath of Count One, it does not improve. Count Two, for example, is a twenty-five page claim

against Defendant Medicare[13] that does not clearly indicate the constitutional, statutory, or common law nature of a particular legal claim and discusses everything from the potential for people "[a]t any age, from 0 to 140 years," to "suddenly become a major care problem," the cost of Plaintiff's own healthcare following his stroke, the need for further investigation of nursing home abuse cases, and the desirability and limitations[14] of using artificial intelligence to overhaul nursing home regulations.  (Doc. No. 157 at 52-77, ¶¶ 116-198.) While the undersigned does not intend to denigrate any of these matters or make light of Plaintiff's concerns, the undersigned is at a loss, despite all reasonable efforts, to understand what cognizable legal claim(s) are premised upon the allegations in Count Two. Defendants cannot reasonably be expected to form a response to Count Two, nor could litigation of Count Two's meanderings be corralled any more effectively than Plaintiff's errant cattle.[15] *See Poulos*, 2015 WL 12860562, at *2 ("Like a shotgun pleading, the

---

[13] Count Two also accuses other entities, including other Defendants, of misconduct, thus making it unclear which Defendant(s) are subject to that count.

[14] For example, Paragraph 154 of Plaintiff's Second Amended Complaint is related to Plaintiff's indicated desire for the court to use (or mandate the use of) artificial intelligence to review or rewrite portions of the administrative code. It reads as follows:

> In simple terms, AI is like a person's child. Child is like parents sometimes or often a great extent. However, child is capable of assimilating new ideas. Unlike child, AI is based on input into a linked network setup by programmer who may be biased. That should be enough to prevent AI from making legal decisions in Court. Add to that AI can both look at all the options rapidly and make decisions very fast to arrive at new ideas. Finally, substantive persuasion of a variety that Court has not experienced can well up from AI. Very dangerous if thought about very long. AI can sit there and play a person like a piano.

(Doc. No. 157 at 64 ¶ 154.)

Second Amended Complaint 'harm[s] the court by impeding its ability to administer justice' and the time which will be spent managing this litigation will detract from time which could be spent on other cases.'" (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1131 (11th Cir. 2001), *abrogated on other grounds as recognized by Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357 n.10 (11th Cir. 2018)).

The Seventeenth and last Count of the Second Amended Complaint is a claim against "Defendant UAB Highlands as Plaintiff will call all subsidiaries of University of Alabama System and other business operations of State of Alabama now in force," a definition so broad that it is difficult to understand precisely what entities are subject to Count Seventeen. (Doc. No. 157 at 372 ¶ 1220.) Count Seventeen appears to describe a stay by Plaintiff's mother at UAB Highlands that did not include any incidents in which treatment fell below the standard of care and, in fact, saw some improvement in her pressure sores. (*Id.* at ¶¶ 1225-1236 (describing a hospitalization at UAB Highlands that was prefaced by Plaintiff's mother's meal at a Popeyes Chicken restaurant before checking into UAB Highlands and that ended with Plaintiff picking his mother up from UAB

---

[15] Plaintiff has several times requested extensions of time due to the proclivity of his cattle to escape their pasture into the territory of disagreeable neighbors to the north. (*See, e.g.*, Doc. No. 159 at 2-3 ¶¶ 5-6 ("[A] storm came through and damaged fence at both western pasture and eastern pasture. Cattle decided upon seeing green up that escape plans were then on to be practiced daily worse than ever.... Pregnant cow moved west is a prime suspect for tearing down fences.... Tuesday, all cattle were inside his pasture. However, Plaintiff suspects some were out in morning other than bull that was out on south side of pasture."); Doc. No. 161 at 2 ¶ 3 ("Plaintiff has for almost a month been chasing cattle, mainly three bulls, in his west pasture daily. Along north boundary with disagreeable neighbors an electric fence has been installed. One bull has repeatedly been shocked but went on through fence. He is by far Plaintiff[']s best bull."); Doc. No. 162 (detailing the latest delays caused by the need to recover loose cattle and repair fences); Doc. No. 163 at 1 (explaining how Plaintiff injured his arm while searching for lost or stolen cattle).)

Highlands and touring the area around UAB Highlands with her before driving home).)
Plaintiff speculates[16] that UAB Highlands "should have done more" to help his mother and
takes issue with a doctor's conclusion that his mother ultimately would not recover.
However, he fails to specifically allege what "more" should have been done or how UAB
Highlands's failure to do "more" subjects it to legal liability. Thereafter, Count Seventeen
trails off into a rambling discussion of more or less unrelated matters, eventually totaling
20 pages (sixty-two separately numbered paragraphs) covering constitutional law, an
alleged conspiracy in probate court to commit Plaintiff's mother to medical care against
her will for the pecuniary gain of some of the other Defendants (but not, apparently,
Defendant UAB), discussions of case law and the history of sovereign immunity as a
concept, Plaintiff's disagreement with the applicability of sovereign immunity to various
Defendants,[17] and a range of other topics. There is no plausible way to keep Count

---

[16] Plaintiff seems to acknowledge that he is speculating. (*See* Doc. No. 157 at 386 ¶ 1255 ("Plaintiff has no idea how Mother was treated at UAB Highlands. Plaintiff thinks she was treated well but not given an opportunity to improve.").)

[17] For example, Plaintiff includes the following:

> From these statements, anyone can see that Plaintiff thinks sovereign immunity was slipped onto United States citizens' bodies like a nocturnal vampire bat that only desires a little blood. Rabies has erupted from an otherwise harmless bite and takes the form of government employees claiming to be sovereigns working for The Sovereign when in fact the citizens are the true sovereigns. What a terrible demise to a great idea being advanced by Attorneys no less.

(Doc. No. 157 at 392 ¶ 1267.)

Seventeen alone from the litigation hazards that accrue from an opaque shotgun pleading. The other Counts of Plaintiff's Second Amended Complaint are similarly amorphous.[18]

In sum, Plaintiff's Second Amended Complaint is a shotgun pleading that does not comply with Rule 8(a)(2)'s requirement of "a short and plain statement" of Plaintiff's claims. Nor does it comply with the February 16, 2024 Order (Doc. No. 137) instructing Plaintiff to amend with reasonably detailed instructions on how to comply with the applicable rules. Regardless of the merits (if any) of Plaintiff's claims, this case simply cannot proceed without a serviceable complaint, and Plaintiff has demonstrated that he cannot produce one in compliance with the court's orders, instructions, and deadlines. This court has the inherent power to dismiss an action where, as here, a *pro se* plaintiff fails to amend a shotgun complaint in accordance with the court's orders and the Federal Rules of Civil Procedure, particularly after being warned of the potential for dismissal in the event of noncompliance. Fed. R. Civ. P. 41(b) (providing for dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order");[19] *Townsend v. Beck*, 295 F. App'x 950, 951 (11th Cir. 2008) (recognizing inherent power, beyond that of Rule 41(b), to dismiss a complaint to enforce court orders and provide for efficient disposition of litigation where the *pro se* plaintiff's amended complaint did not comply with the court's

---

[18] The undersigned does not find it necessary to detail the pleading issues in Counts Three through Sixteen, which, among other problems, implicate the same shotgun pleading problems as the Counts that are discussed in more detail in this Order and Recommendation.

[19] Though Rule 41(b) refers specifically to dismissal on a defendant's motion, a district court may also issue a Rule 41(b) dismissal on its own motion. *Rodriguez*, 848 F. App'x at 413 (citing *Betty K Agencies*, 432 F.3d at 1337–38).

orders to provide a short, plain statement of his claims);  *see Rodriguez v. Lawson*, 848 F. App'x 412, 413 (11th Cir. 2021) (holding that the district court had the inherent power to *sua sponte* dismiss a *pro se* complaint without prejudice where the plaintiff failed to comply with the court's orders to amend in accordance with Federal Rule of Civil Procedure 8(a) and where the plaintiff had been warned of the potential for dismissal); *Johnson v. Georgia*, 661 F. App'x 578, 581 (11th Cir. 2016) (holding that, "[i]n the light of [the *pro se* p]laintiff's continued failure to comply with federal pleading requirements" and the district court's orders to file an amended complaint setting forth a "short, plain statement" of his claims,  "the district court committed no error in dismissing with prejudice [the p]laintiff's first amended complaint," which, like the original complaint, was a shotgun pleading); *Popham v. Cobb Cnty., Georgia Gov't*, 392 F. App'x 677, 680 (11th Cir. 2010) ("The district court did not abuse its discretion in dismissing Popham's complaint without prejudice, because Popham failed to comply with the court's order to amend his complaint.").

Further, where, as here, the failure to comply with court orders is persistent and there is a clear record of delay despite the court's many efforts to prod Plaintiff to comply with reasonable deadlines and timely participate in the litigation of his case, dismissal with prejudice is appropriate. The record demonstrates that Plaintiff is no more likely to timely prosecute this action or timely comply with court orders if he is allowed to refile it as he

would be if he were allowed another opportunity to amend in this action.[20] He has already been given several chances to present a short, plain statement of his claims, and the court has done all it can to attempt a less drastic remedy than dismissal with prejudice. Therefore, additional expenditure of judicial resources on this action are not warranted. *Townsend*, 295 F. App'x at 952 (holding that "the district court did not abuse its discretion in dismissing [a *pro se* plaintiff's] complaint with prejudice" where there was "a clear record of delay or willful" noncompliance with orders to amend a shotgun complaint and where "lesser sanctions [would be] inadequate" to correct the problem, as the district court had found that the plaintiff's "persistent defiance ... warranted no further expenditure of judicial time and resources"); *see also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."); *Nichols v. Carnival Corp.*, 423 F. Supp. 3d 1316, 1325 (S.D. Fla. 2019) ("The Court is left with the ineluctable conclusion that Plaintiff cannot state a plausible claim and that a further opportunity to amend will produce only another prolix, but legally insufficient, complaint. The Court, in the exercise of its discretion, finds that dismissal with prejudice is warranted.")

## V.    CONCLUSION

Accordingly, it is ORDERED as follows:

---

[20] Dismissal without prejudice would provide a further opportunity to amend. As already explained throughout this Order and Recommendation, the record demonstrates that a further opportunity to amend would be futile.

1.      Plaintiff's April 9, 2004 Motion to Continue (Doc. No. 156) is DENIED as moot.

2.      Plaintiff's Motions to Continue (Docs. No. 158, 159, 160), Motion to Explain Lack of Progress (Doc. No. 161), Explanation for Delay (Doc. No. 162), and Motion to Show Arm Damage (Doc. No. 163) are CONSTRUED as Rule 6(b)(1)(B) motions for extension of time and as motions for leave to amend the complaint. Further, Plaintiff's Rule 6(b)(1)(B) motions for extension of time (Docs. No. 158, 159, 160, 161, 162, 163) are DENIED and Plaintiff's motions for leave to amend (Docs. No. 158, 159, 160, 161, 162, 163) are DENIED.

Further, it is the RECOMMENDATION OF THE MAGISTRATE JUDGE, in accordance with the court's inherent powers and Rule 41(b) of the Federal Rules of Civil Procedure, that this action be dismissed with prejudice for failure to comply with Rule 8(a) of Civil Procedure and the orders of this court.

Further, it is ORDERED that the parties shall file any objections to this Recommendation on or before **June 13, 2024**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Plaintiff is advised that this Recommendation is not a final order of the Court; therefore, it is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered

in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

DONE this 29th day of May, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE